UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASPEN SPECIALTY INS. CO.,

     Plaintiff,

     Case No. 21-11411
     Honorable Laurie J. Michelson

v.

PROSELECT INS. CO.,

     Defendant.

---

**OPINION AND ORDER GRANTING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT [9], DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [6], AND DENYING DEFENDANT'S MOTION FOR SUPPLEMENTARY BRIEFING [15]**

---

Two insurers, Aspen Specialty Insurance Company and Proselect Insurance Company, dispute whether Proselect is obligated to defend and indemnify Raul Morales in a professional negligence action in Michigan state court. In that case, Jody Marcin is suing Morales, a licensed massage therapist, for therapy he performed on her in 2017. Marcin claims that Morales, his employer, Total Health Systems, Inc., and two Total Health Systems chiropractors were negligent in caring for her.

Aspen provides professional liability insurance to Morales and has been defending him against Marcin's allegations. However, Aspen argues that Proselect, Total Health Systems' insurer, is responsible for defending and indemnifying Morales in the underlying case. So Aspen brought a declaratory judgment action in this Court, asking it to declare that Proselect has a duty to defend and a duty to indemnify Morales (Count I), and seeking equitable subrogation for the litigation expenses it

already incurred (Count II). In response, Proselect argues that it has no such duties because Morales is not covered under its policy as he did not provide "medical treatment" to Marcin as a massage therapist.

Both insurance companies ask the Court to rule in its favor as a matter of law. In particular, Proselect brought a motion for summary judgment. And Aspen filed a partial motion for summary judgment on the duty to defend claim.

Because the Court finds that Proselect has a duty to defend Morales in the underlying state action, the Court will GRANT Aspen's partial motion for summary judgment and DENY Proselect's motion for summary judgment.

## I.

The Court will begin by summarizing the alleged facts of the underlying lawsuit, which are primarily provided by the complaint in that suit.

Jody Marcin sought evaluation and treatment from Total Health Systems, Inc. for pain and decreased mobility in her neck and back. (ECF No. 1, PageID.11–12.) She initially started her treatment with Rose Minkiewicz, a chiropractor, who recommended and performed acute chiropractic care. (*Id.* at PageID.12.) Marcin says that Minkiewicz also recommended that Marcin try massage therapy, which Total Health Systems offers. (*Id.*)

Despite treatment, Marcin continued to experience lower back pain and increased pain in her right arm and shoulder. (*Id.* at PageID.12–13.) Marcin alleges that Minkiewicz and Jason Davila, another chiropractor at Total Health Systems,

"repeatedly recommended to include deep tissue massage as part of the therapeutic treatment program[.]" (*Id.* at PageID.11, 13.)

Marcin alleges that she took her chiropractors' advice and saw Raul Morales, a massage therapist and employee of Total Health Systems, for massage therapy. (*Id.* at PageID.13.)  Before receiving services from Morales, Marcin signed a consent form stating that "a massage therapist does not treat, prescribe for, or diagnose any illness, disease or any other physical or mental disorder, injury or condition." (ECF No. 6-4, PageID.213.) Marcin alleges that her pain worsened after the massage therapy. (*Id.*) She went back to see Davila, who performed additional chiropractic care, but Marcin says her pain was only exacerbated by his treatment. (*Id.* at PageID.13–14.)

Marcin eventually sought treatment at McLaren Macomb Hospital and underwent surgery there. (*Id.* at PageID.15.) Marcin alleges that the massage therapy and chiropractic treatment exacerbated her pain, necessitating the surgery, and the continued pain and mobility issues make it so she is unable to perform daily tasks on her own and require continued medical management. (*Id.* at PageID.15–16.) Thus, Marcin sued Total Health Systems, Minkiewicz, Davila, and Morales for negligence and professional negligence. (*Id.* at PageID.16–26.)

At this point, Aspen entered the picture. Morales had taken out a professional liability and commercial general liability policy with Aspen, and Aspen states that it has paid Morales' defense costs in the underlying suit to date. (*See* ECF No. 6-2, PageID.74.)

But, says Aspen, it is actually Proselect that should pay for Morales' defense costs and should be responsible for indemnifying him should a judgment be awarded in the underlying suit. Proselect issued an entity liability policy for Total Health Systems that includes provisions stating that it has a duty to defend and duty to indemnify Total Health Systems and its employees for claims "for an incident in the performance of professional services." (ECF No. 6-2, PageID.137.)

After receiving no response to its inquiries, Aspen sued Proselect in a declaratory judgment action in this Court. (ECF No. 1.) Aspen brought two claims: one asking for a declaratory judgment on Proselect's duty to defend and duty to indemnify Morales (Count I) and one for equitable subrogation of the expenses Aspen already incurred from defending Morales (Count II). (*Id.* at PageID.6–8.)

In lieu of responding to the complaint, Proselect filed for summary judgment, arguing that Morales is not covered under its policy.[1] (ECF No. 6.) Aspen also filed for partial summary judgment on the duty to defend. (ECF No. 9.) The Court heard oral argument on the motions on December 2, 2021, and both are ready for ruling.

## II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] It is not clear from the briefing whether Proselect moves for summary judgment on Aspen's claim for equitable subrogation. But since the Court denies Proselect's motion for summary judgment, and neither party has provided argument specific to equitable subrogation, the Court will not decide the issue at this time.

When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessarily the case that either party is entitled to summary judgment. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). When considering Proselect's motion, the evidence is viewed in the light most favorable to Aspen and the initial (and ultimate) burden is on Proselect to show that it is entitled to judgment as a matter of law. *See id.* The opposite is true when considering Aspen's motion. *See id.*

III.

Both parties ask this Court to determine whether Proselect has a duty to defend Morales in the underlying state lawsuit. To do so, the Court must interpret Proselect's insurance policy to see whether Morales and the massage therapy he provided are covered.

A.

The Court begins by laying out the legal principles behind interpretation of insurance contracts.

Both parties agree that state law, specifically Michigan law, governs how to interpret the Proselect policy. In Michigan, an insurance contract is generally to be interpreted like any other contract. *Stryker Corp. v. XL Ins. Am.,* 735 F.3d 349, 354 (6th Cir. 2012); *Rory v. Continental Ins. Co.,* 703 N.W.2d 23, 26 (Mich. 2005). The meaning of a contract is a question of law, as is the question of whether contract language is ambiguous. *Wilkie v. Auto–Owners Ins. Co.,* 664 N.W.2d 776, 780 (Mich. 2003).

"The relevant contract interpretation principles are simple enough—courts should enforce contract language in accordance with its plain and commonly used meaning, being careful to enforce specific and well-recognized terms." *Henderson v. State Farm,* 596 N.W.2d 190, 193–94 (Mich. 1999); *Stryker,* 735 F.3d at 354. If a term is defined by the policy, then the definition, as long as it is unambiguous, controls. *Henderson*, 596 N.W.2d at 193. But, if a term is undefined, the Court should still accord it its plain and common meaning. *See Henderson*, 596 N.W.2d at 193–94 ("Undefined terms, too, should be construed according to their commonly used meaning unless it is apparent from the whole policy that a special meaning was intended.").

So the Court will analyze Proselect's policy using traditional tools of contract interpretation, starting with the plain and common meaning of the terms.

## B.

The coverage dispute, according to the parties, primarily involves a provision in Proselect's entity liability policy, which states, "WE will pay on YOUR behalf those sums which YOU become legally obligated to pay as DAMAGES . . . because of a CLAIM for an INCIDENT in the performance of PROFESSIONAL SERVICES by YOU or someone for whom YOU are legally responsible." (ECF No. 6-3, PageID.133.) The Proselect policy also provides that it has the right and duty to defend a suit seeking damages that are covered under the agreement. (*Id.* at PageID.137.) Thus, whether Proselect has a duty to defend a lawsuit necessarily involves the interpretation of the covered damages provision set out above.

6

As an initial matter, the "you" in the above provision includes Morales. Proselect does not contest this. "You" is defined as "insureds," which in turn is defined by the entity liability policy as, among other things, "a named insured's employees." (ECF No. 16-3, PageID.135.) Total Health Systems is a named insured (*id.* at PageID.109) and Morales is its employee, so "you" includes Morales.

But, says Proselect, Morales is still not covered by the policy. Proselect argues that because the provision limits payments to claims involving "incident[s] in the performance of professional services," the policy cannot cover Morales because he does not provide professional services. Specifically, "professional services" is a defined term in the policy that in part means "[m]edical, surgical, dental or nursing treatment including the furnishing of food or beverages in connection therewith[.]" (ECF No. 6-3, PageID.124.) Proselect contends that as a massage therapist, Morales does not provide "medical, surgical, dental or nursing treatment."

Thus, the dispute boils down to the definition of "medical treatment" and whether that definition includes the massage therapy Morales performed. Proselect's policy does not define medical treatment. So, as instructed by Michigan law, the Court will start by determining the plain and ordinary meaning of the term "medical treatment."

During oral argument, the parties clarified their plain and ordinary definitions of medical treatment. Proselect contends that medical treatment means treatment provided by a medical doctor. Aspen argues that medical treatment is remediation of a health problem.

The Court finds that Aspen's definition better aligns with the ordinary meaning of medical treatment. To ascertain this meaning, the Court "can look to dictionaries, including legal dictionaries." *King v. Pa. Life Ins. Co.*, 470 F. App'x 439, 444 (6th Cir. 2012) (citing *Minges Creek, LLC v. Royal Ins. Co. of Am.*, 442 F.3d 953, 956 (6th Cir. 2006)). The Cambridge Dictionary, for example, defines "medical" as "related to the treatment of illness or injuries." *Medical*, Cambridge Dictionary, Cambridge University Press (2021), https://perma.cc/DM9G-ZSAS. And a relevant definition of "treatment" it provides is "the use of drugs, exercises, etc. to cure a person   of   an illness or injury." *Treatment*, Cambridge Dictionary, Cambridge University Press (2021), https://perma.cc/D4UM-CABA. This supports the broader definition Aspen proposed. The medical dictionary definition also supports a broad definition of medical treatment that goes beyond the care provided by a medical doctor. Dorland's Illustrated Medical Dictionary states that "medical" means "pertaining to medicine or the treatment of diseases; pertaining to medicine as opposed to surgery." *Dorland's Illustrated Medical Dictionary* 1135 (31st ed. 2007). In turn, "medicine" is "any drug or remedy; the art and science of the diagnosis and treatment of diseases and the maintenance of health; treatment of diseases by nonsurgical means." *Id.* "Treatment" is "the management and care of a patient for the purposes of combating disease or disorder." *Id.* at 1983. These definitions are also not limited to care provided by a medical doctor, but instead can relate to the maintenance of health and any type of care that is used to combat a disease or disorder.

And finally, Black's Law Dictionary states that "treatment" is "a broad term covering all the steps taken to affect a cure of an injury or disease; including examination and diagnosis as well as application of remedies." *Treatment*, Black's Law Dictionary (6th ed. 1990). It does not provide a definition for medical. This definition too aligns with other definitions of medical treatment from sources commonly used by courts to determine the meaning of a term.

Case law also shows that the plain and ordinary meaning of medical treatment is broad and could encompass more than just care provided by a medical doctor. The Fifth Circuit, relying on the definition of medical treatment and treatment from Webster's Third New International Dictionary and Black's Law Dictionary, held that the term medical treatment is unambiguous and means "facilitating treatment for [plaintiff's] disease." *Lebron v. Nat'l Union Fire Ins. Co.*, 849 F. App'x 484, 487 (5th Cir. 2021). It held that the patient changing her bandages in preparation for dialysis was medical treatment under this definition. The Eighth Circuit also used Webster's Third New International Dictionary's definition of medical treatment to conclude that taking Vitamin A supplements constituted medical treatment as they were taken with the purpose of alleviating the progression of a disease and it was the only manner in which the person could treat his condition. *Kutten v. Sun Life Assur. Co. of Canada*, 759 F.3d 942, 945–46 (8th Cir. 2014).

Proselect argues that medical treatment cannot be given a broad definition within the context of the policy because it would render the other terms in the phrase—surgical, dental, and nursing—meaningless. In other words, a broad

definition of medical would include surgical or nursing treatment, says Proselect, so there would be no need to separate out surgical treatment unless medical treatment meant something more specific.

This argument has facial appeal as the Court should not construe a contractual term in a way that renders other terms meaningless or surplusage. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) ("Every word, phrase, and clause in a contract must be given effect, and contract interpretation that would render any part of the contract surplusage or nugatory must be avoided." (citing *McCoig Materials, LLC v. Galui Const., Inc.*, 818 N.W.2d 410, 416 (Mich. 2012)). The Court disagrees, however, that a broad definition of medical treatment would render surgical treatment (or dental or nursing treatment) as mere surplusage. For example, surgical treatment could ordinarily include cosmetic surgery that is not done to cure or alleviate a disease or ailment. The same can be said for dental treatment. And nursing care can include assisting patients with tasks of daily living and personal hygiene that they are unable to perform but are not done with the primary purpose of caring for a disease or ailment. So the Court is not persuaded that it is limited to a narrow definition of medical treatment because of the other terms used in the policy's definition of professional services.[2]

_____

[2] Further, construing the plain meaning of medical treatment in the way Proselect argues would be too limiting. For example, emergency medical technicians and physician's assistants undoubtedly provide medical treatment but are not medical doctors. The same rings true for most other medical technicians, podiatrists, and optometrists. Thus, the Court cannot construe medical treatment so narrowly as to exclude many of these services.

And there is at least some evidence that Proselect also contemplated a broader definition of medical treatment than services provided by a medical doctor. For example, the Proselect policy specifically excludes chiropractors from coverage. (ECF No. 6-3, PageID.132 (excluding chiropractors employed by Total Health Systems from the definition of insured).) Chiropractors are not medical doctors. So the only reason they would need to be excluded from the policy is if they could provide "professional services"—likely medical treatment as opposed to surgical, dental, or nursing treatment—and be covered under the entity liability policy. Proselect proffered to this Court that this explicit exclusion was motivated by case law that suggested there may be a question of whether chiropractors would be covered. Given the ordinary meaning of medical treatment, perhaps the same precaution should have been taken to exclude massage therapists. But since it was not, and there is evidence that Proselect considered this while drafting the policy, the Court will employ a broader definition of medical treatment than that provided by Proselect and determine whether massage therapy provided by Morales falls within it.

Lastly, the parties provided the Court with various Michigan statutory and regulatory provisions pertaining to the practice of medicine and massage therapy. But none of them define "medical treatment."

In sum, the dictionary definitions from various sources and case law demonstrate that "medical treatment" is not ordinarily limited solely to care provided by a medical doctor.

11

C.

Having now determined the plain and ordinary meaning of medical treatment, the question becomes whether the massage therapy Morales provided falls into this definition.

Whether massage therapy constitutes medical treatment depends on the purpose for which massage therapy is sought. Massage therapy cannot always fall under the definition of medical treatment. As Aspen itself conceded at the hearing, sometimes massage therapy is sought out for relaxation after a long day of work, for example, and is not used for the purpose of alleviating a condition, disease, or ailment. On the other hand, massage therapy can be used to alleviate pain from a physical ailment and can be used to maintain one's health, which does fall under the broad definition of medical treatment.

So coverage under the policy turns on whether Morales provided massage therapy for the purpose of alleviating a condition. If so, then his actions would fall under "medical treatment" and be covered professional services under the policy, triggering the duty to defend.

The Court notes that the duty to defend is distinct and broader than the duty to indemnify. *See e.g.*, *City of Bad Axe v. Pamar Enterp., Inc.*, No 345810, 2020 WL 230010, at *1 (Mich. Ct. App. Jan. 14, 2020) (citing *Busch v. Holmes*, 662 N.W.2d 64, 67 (Mich. Ct. App. 2003)); *Allstate Ins. Co. v. Freeman*, 443 N.W.2d 734, 737 (Mich. 1989). Thus, the duty to defend "depends upon the allegations in the complaint of the third party in his or her action against the insured [and] is not limited to meritorious

12

suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage." *Protective Nat. Ins. Co. of Omaha v. City of Woodhaven*, 476 N.W.2d 374, 375–76 (Mich. 1991); *see also Perfect Fence Co. v. Accident Fund Nat'l Ins. Co.*, No. 349114, 2020 WL 3120264, at *3 (Mich. Ct. App. June 11, 2020). So the Court must look to Marcin's complaint to determine the alleged purpose of Marcin receiving massage therapy, which answers whether Morales provided "medical treatment."

Marcin's complaint clearly alleges that Morales provided massage therapy to alleviate the pain she was experiencing. Marcin states that she sought treatment at Total Health Systems for "pain and decreased range of motion in the neck and back." (ECF No. 1, PageID.12.) Marcin alleges that she was "repeatedly recommended to include deep tissue massage as part of the therapeutic treatment program" by the chiropractors she saw. (*Id.* at PageID.13.) She also alleges that one of the chiropractors "recommended that [Marcin] try the massage service that was offered at the facility." (*Id.* at PageID.12.) The allegations show that Marcin received massage therapy as part of her overall treatment, which falls into the definition of medical treatment as care provided for the maintenance of health or to alleviate or combat a disorder.

Proselect points to the consent agreement Marcin signed as evidence to show that Marcin did not receive massage therapy to cure or treat a disease or disorder. True, the consent agreement states that Marcin understands that "a massage therapist does not treat, prescribe for, or diagnose any illness, disease or any other

physical or mental disorder, injury or condition." (ECF No. 6-4, PageID.213.) But as Michigan law establishes, the Court must look to the allegations of the complaint to determine whether a duty to defend exists, which is whenever a third-party's allegations "arguably qualify for coverage[.]" *Livonia Pub. Schs. v. Selective Ins. Co. of the Southeast*, No. 16-cv-10324, 2020 WL 728540, at *8 (E.D. Mich. Feb. 13, 2020) (citing *Citizens Ins. Co. v. Secura Ins.*, 755 N.W.2d 563 (Mich. Ct. App. 2008)). This determination is made "at the time the third-party files a complaint against the insured." *Id.* (citing *American Bumper & Mfg. Co. v. Hartford Fire Ins. Co.*, 550 N.W.2d 475 (Mich. 1996)). Though a consent agreement that is revealed later in the underlying action may provide Morales with a defense against negligence, it cannot eviscerate Proselect's duty to defend as it stands when the complaint was filed.

The same argument pertains to the deposition testimony provided by Proselect in its supplemental briefing. (ECF No. 15.) For the duty to defend, Michigan law is clear that the allegations in the underlying complaint govern. The Court therefore will not consider deposition testimony that was given after the complaint was filed as that has no bearing on whether Proselect had a duty to defend at the onset of the case.

Proselect further argues that the consent agreement should be considered because the Court must look beyond the nomenclature used in the complaint to the substance of the injury that supports the complaint. Proselect cites *Allstate Insurance Company v. Freeman*, which directs courts to "determine the substance, as opposed

14

to the mere form, of the complaint." 443 N.W.2d 734, 737 (Mich. 1989) (quoting *Illinois Emps. Ins. of Wausau v. Dragovich*, 362 N.W.2d 767 (Mich. 1984)).

But looking beyond nomenclature when determining the duty to defend is not the same as looking to documents extrinsic to the complaint. And Marcin's complaint says that the massage therapy performed by Morales was recommended by her chiropractor and was part of her treatment plan. The substance of those allegations—i.e., what Marcin is really alleging—is that she sought massage therapy to alleviate a medical ailment as recommended by her chiropractor. So the consent agreement does not factor into the Court's determination of the nature of the allegations in Marcin's complaint.

In sum, the Court finds that the allegations in the complaint demonstrate that Morales provided massage therapy as part of Marcin's treatment plan for pain and decreased mobility. Thus, the massage therapy falls within the plain and ordinary meaning of medical treatment, which in turn means that the incident in question occurred during the "performance of professional services." Proselect has a duty to defend Morales in the underlying action.

## IV.

As for the duty to indemnify, which Proselect moves on, the Court finds that this issue is not yet ripe.

Courts can generally only adjudicate a claim on its merits if it is ripe. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 284 (6th Cir. 1997). "A claim is unripe when it is anchored in future events that may not occur as anticipated, or at all."

*Jackson v. City of Cleveland*, 925 F.3d 793, 807 (6th Cir. 2019) (internal citations omitted). Courts have discretion to consider whether the issues are appropriate for judicial resolution and "the degree of 'hardship to the parties if judicial relief is denied.'" *Id.* (quoting *Young v. Klutznick*, 652 F.2d 617, 625 (6th Cir. 1981)). Applying this doctrine to indemnification claims, the Sixth Circuit held that, except in certain special circumstances, "a claim for indemnification for damages that may be awarded on an underlying tort claim should not be adjudicated on the merits until the underlying claim is adjudicated." *Jackson*, 925 F.3d at 807–08; *see also Safety Nat'l Cas. Corp. v. Am. Special Risk Ins. Co.*, 99 F. App'x 41, 43 (6th Cir. 2004) (finding unripe a claim of indemnification for fraudulent conveyance because, among other reasons, the underlying claim for fraudulent conveyance had not yet been adjudicated); *Livonia Pub. Schs.*, 2020 WL 728540, at *8 ("the duty [to] indemnify exists only when the third-party's allegations have been proven true or when, after factual development, the insurer and insured decide [to] settle the claims rather than test their veracity in court" (citing *Citizens Ins. Co.*, 755 N.W.2d at 568)).

Neither party claims that the underlying tort action has been adjudicated in this case. And the parties indicate that a trial date has been set for February 2022 in that action. The indemnification provision in the Proselect policy is limited to "sums which you become legally obligated to pay as damages," and no such sums have been awarded yet in the underlying litigation. The underlying case may result in no damages, which would render the question of indemnification moot. Further, because Aspen (by way of Morales) currently does not owe any damages that Proselect would

16

be asked to indemnify, neither party will be prejudiced if the Court does not decide the question of indemnification for the time being.

Thus, the Court will deny Proselect's motion on the issue of indemnification.

V.

Because the complaint in the underlying state lawsuit alleges that Morales provided massage therapy as part of Marcin's treatment, and such treatment falls within the plain and ordinary definition of "medical treatment," Morales was providing medical treatment under Proselect's policy. And since the policy defines professional services as medical treatment, Morales is subject to a "claim for an incident in the performance of professional services," and is entitled to Proselect's defense. But since no damages have been awarded yet, it is too early for the Court to determine whether there is a duty to indemnify.

So the Court GRANTS Aspen's partial motion for summary judgment on the duty to defend and DENIES Proselect's motion for summary judgment and its motion for supplemental briefing. The equitable subrogation claim also survives, but the Court provides no decision on it at this time.

SO ORDERED.

Dated: December 15, 2021

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

17