UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ASPEN SPECIALTY INSURANCE
COMPANY,

      Plaintiff,

v.

PROSELECT INSURANCE
COMPANY,

      Defendant.

Case No. 21-11411
Honorable Laurie J. Michelson

---

**OPINION AND ORDER GRANTING IN PART ASPEN'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [27] AND GRANTING IN
PART PROSELECT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT [25]**

---

Two insurers, Aspen Specialty Insurance Company and ProSelect Insurance Company, dispute whether ProSelect is obligated to defend and indemnify licensed massage therapist Raul Morales in a professional negligence action in Michigan state court. In that case, Jody Marcin is suing Morales for therapy he performed on her in 2017. Marcin claims that Morales, his employer, Total Health Systems, Inc., and two Total Health Systems chiropractors were negligent in caring for her.

Aspen provides professional liability insurance to Morales and has been defending him against Marcin's allegations. However, Aspen believes that ProSelect, Total Health Systems' insurer, is also responsible for defending and

indemnifying Morales in the underlying case. So Aspen brought a declaratory judgment action in this Court, asking it to declare that ProSelect has a duty to defend and a duty to indemnify Morales (Count I) and seeking equitable subrogation for already-incurred and future defense expenses (Count II).

In response to the complaint, ProSelect moved for summary judgment on Count I, arguing that it had no duty to defend or to indemnify because Morales was not covered by its policy. And Aspen filed a cross-motion for partial summary judgment on the duty to defend. The Court held that ProSelect's policy covers Morales, and thus ProSelect has a duty to defend Morales.

Now, the parties are back before the Court on cross-motions for summary judgment on the issue of allocation of defense costs.[1] For the reasons explained below, the Court GRANTS IN PART Aspen's motion and finds that ProSelect must pay defense costs for Morales. The Court also GRANTS IN PART ProSelect's motion and finds that ProSelect is responsible for 1/3 of total defense costs, which is proportioned based on each policy's claim limit.

---

[1] The issue of defense costs appears to be identical to Aspen's equitable subrogation claim, so the Court will treat these motions as requesting summary judgment on Count II of the complaint. (*See* No. 1, PageID.7 ("Aspen requests that the Court award to Aspen, and order ProSelect to pay, all amounts that Aspen has incurred, or will incur, in the defense of Morales in the Underlying Action, plus interest.").)

**I.**

The Court has already summarized the facts of this case elsewhere (ECF No. 19) but provides an overview here as well.

As described above, Marcin is suing Morales (and other defendants) in state court for negligence and professional negligence under Michigan law. (ECF No. 1, PageID.16–26.) Aspen says it has paid Morales' defense costs in this suit to date based on a professional liability and commercial general liability policy Morales has with Aspen. (See ECF No. 6-2, PageID.74.) But, according to Aspen, it does not bear this responsibility alone. Aspen contends that ProSelect is also responsible for defending Morales and indemnifying him if a judgment is awarded in the underlying suit. ProSelect issued an entity liability policy to Total Health Systems, Morales' employer, that includes provisions stating that ProSelect has a duty to defend and duty to indemnify Total Health Systems and its employees for claims "for an incident in the performance of professional services." (ECF No. 6-2, PageID.137.)

After receiving no response to its inquiries regarding Morales' coverage, Aspen sued ProSelect seeking a declaratory judgment from this Court. (ECF No. 1.) In lieu of responding to the complaint, ProSelect filed for summary judgment, arguing that Morales was not covered under its policy. (ECF No. 6.) Aspen also filed for partial summary judgment on the duty to defend. (ECF No. 9.) The Court heard oral argument on the motions on December 2, 2021, and

on December 15, the Court granted Aspen's motion for partial summary judgment on the duty to defend. Specifically, the Court held that the massage therapy Morales provided fell within the plain and ordinary meaning of "medical treatment," which meant that under the ProSelect policy, the incident occurred during "the performance of professional services." *Aspen Specialty Ins. Co. v. ProSelect Ins. Co.*, No. 21-11411, 2021 WL 5919062, at \*7 (E.D. Mich. Dec. 15, 2021). Thus, the Court found that "ProSelect has a duty to defend Morales in the underlying action." *Id.*

The Court also found that the issue of indemnification was not yet ripe and denied ProSelect's motion for summary judgment on that issue. (*Id.* at PageID.459, 461.)

Typically, parties are required to raise all issues in a single motion for summary judgment. Hence this District's local rules, which require a party to obtain leave of court to file more than one motion for summary judgment. E.D. Mich. LR 7.1(b)(2).

This case is proceeding a bit differently though. Aspen informed the Court that following the determination that ProSelect has a duty to defend Morales, ProSelect was not responding to its inquiries about how the parties should allocate defense costs. (ECF No. 21, PageID.463–464.) So Aspen asked the Court for leave to "file a motion for an Order requiring ProSelect to pay half of all past defense costs and contribute equally to all future defense costs

4

paid in furtherance of Mr. Morales' defense." (*Id.* at PageID.465.) After discussing this request with the parties, the Court issued a text order allowing the parties to file additional motions for summary judgment on the limited issue of defense costs as described in Aspen's request.

Those second motions for partial summary judgment are now before the Court. (ECF Nos. 25, 27.) Given the extensive briefing, the Court considers the motions without further argument. *See* E.D. Mich. LR 7.1(f).

## II.

Federal Rule of Civil Procedure 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

When, as here, there are cross-motions for summary judgment, the Court considers them separately, and it is not necessarily the case that either party is entitled to summary judgment. *See Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021). When considering Aspen's motion, the evidence is viewed in the light most favorable to ProSelect and the initial (and ultimate) burden is on Aspen to show that it is entitled to judgment as a matter of law. *See id.* The opposite is true when considering ProSelect's motion. *See id.*

## III.

### A. Duty to Defend

As an initial matter, the Court addresses ProSelect's attempt to relitigate its duty to defend Morales.

In its second motion for partial summary judgment, ProSelect argues that "a defense is not owed by ProSelect, as the ProSelect policy clearly states that no duty to defend is owed if a duty to defend is owed under another policy." (ECF No. 26, PageID.498.) In support of this argument, ProSelect relies on a provision in its policy, which states in relevant part, "When this POLICY is excess over any OTHER INSURANCE, WE will have no duty to defend YOU against any SUIT or to pay any CLAIM EXPENSES if any other insurer has a duty to defend YOU against that SUIT or to pay for any CLAIM EXPENSES[.]" (ECF No. 6-3, PageID.129.)

The Court agrees with Aspen that the issue of whether ProSelect has a duty to defend Morales is not properly before the Court. As explained previously, the parties needed the Court's permission to file their second motions for summary judgment. *See* E.D. Mich. LR 7.1(b)(2). The Court granted leave to file motions only on "the issue of defense costs," which is contemplated by Count II of Aspen's complaint. (*See* ECF No. 1, PageID.7; ECF No. 21.) In other words, the Court expected that the parties would only brief the amount of defense costs that ProSelect should pay as opposed to whether

6

ProSelect should pay defense costs at all. So ProSelect's motion exceeded the scope of the leave given. The Court declines to consider the additional issues raised, including those that are relevant to Count I.

True, in one sense ProSelect is making an argument about the allocation of defense costs: if the provision ProSelect highlights means that it has no duty to defend in certain circumstances, its allocation is zero. But this is merely a duty-to-defend argument masquerading as an allocation argument. And while the clause also states, "we will have no duty . . . to pay any claim expenses if any other insurer has a duty to . . . pay for any claim expenses," the Court reads this clause as relating to the duty to defend and not the allocation of defense costs. Indeed, ProSelect has not stated that it is solely relying upon the claim expense language (as opposed to the duty to defend part of the clause) nor has it informed the Court why the clause should be read to be about apportionment rather than the duty-to-defend. Without such an argument before the Court, the Court will construe the clause as relating to the duty-to-defend rather than apportionment.

Further, the Court is disinclined to revisit the duty-to-defend issue absent any argument from Proselect that it should. *See Samons v. Nat'l Mines Corp.*, 25 F.4th 455, 463 (6th Cir. 2022) ("[Courts] generally decline to redecide issues that they have already decided. Law of the case thus promotes judicial efficiency by prohibiting parties from indefinitely relitigating the same issue

that a court resolved in an earlier part of the case." (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988); 18B Charles Alan Wright, *Federal Practice and Procedure* § 4478, at 648 (3d ed. 2019))). The Court has already held that "ProSelect has a duty to defend Morales in the underlying action." *Aspen Specialty Ins. Co. v. ProSelect Ins. Co.*, No. 21-11411, 2021 WL 5919062, at *7 (E.D. Mich. Dec. 15, 2021). Indeed, in that opinion, the Court noted that both parties specifically asked the Court to determine whether ProSelect has a duty to defend Morales. (*See* ECF No. 6, PageID.69 (ProSelect arguing that, "Since no theories of recovery fall within the policy, ProSelect also does not owe a duty to defend Mr. Morales in the Underlying Action."); ECF No. 9-1, PageID.265 (Aspen arguing that, "The allegations of the Underlying Action fall within the broad scope of the duty to defend under the ProSelect Policy.").) In arguing that it does not have a duty to defend in its prior motion, ProSelect did not raise this clause in its briefs nor during oral argument. It also did not move the Court to reconsider its opinion—and even if it did, it would not have met any of the criteria for reconsideration. *See* E.D. Mich. LR 7.1(h). And now, ProSelect does not grapple with the fact that the Court already ruled that it had a duty to defend Morales and does not explain why it failed to raise this argument in the prior summary judgment briefing. So the Court sees no reason to reevaluate its prior decision.

In sum, the only issue the Court gave leave to brief in the second motions for summary judgment is how to allocate defense costs, and that is the only issue it will determine. The Court has already held that ProSelect has a duty to defend Morales, which implies that it owes some defense costs. So the Court will now turn to the issue of allocation in light of the competing other-insurance clauses in the parties' policies.

## B. Allocation of Defense Costs

The parties direct the Court to two provisions in their respective policies that they say control allocation of defense costs in this situation.

Some background on Michigan insurance law is helpful. When more than one insurance policy covers a particular insured for a specific risk, the policies may fall into three different tiers. The tiers are "primary coverage," excess "other insurance" coverage, and "true" excess insurance. *State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 398 F. App'x 128, 132 (6th Cir. 2010) (citing *Bosco v. Bauermeister*, 571 N.W.2d 509, 519 (Mich. 1997)).

The provisions the parties point the Court to fall in the "other insurance" tier (as opposed to the "primary coverage" or "true" excess tiers). Other-insurance clauses are standard clauses in insurance contracts that describe how the policy will apply if there is another insurance policy that covers the same risk. *St. Paul Fire & Marine Ins. Co. v. American Home Assur. Co.*, 514 N.W.2d 113, 115 (Mich. 1994) ("'Other insurance clauses' are provisions

inserted in insurance policies to vary or limit the insurer's liability when additional insurance coverage can be established to cover the same loss."). Within the "other insurance" tier, there are three types of clauses—pro rata clauses, escape or no-liability clauses, and excess clauses. *Id.*

Aspen's policy appears to have an excess clause. An excess clause "limits the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance." *St. Paul Fire*, 514 N.W.2d at 121. And the Aspen policy states, "[T]o the extent that any claim against an insured is covered by any other policy of insurance, this insurance will be secondary to and in excess of any other-insurance covering such insured or any other indemnity protection afforded such insured." (ECF No. 6-2, PageID.82.) In other words, Aspen would only be responsible once the costs exceed the policy limit of the primary insurer.

The other-insurance provision in ProSelect's policy is not as straightforward. The provision begins with similar language as Aspen's policy: "[T]he insurance afforded by this POLICY is excess over all OTHER INSURANCE . . . .WE shall not be obligated to contribute with any OTHER INSURANCE to the payment of any DAMAGES or CLAIM EXPENSES." (ECF No. 6-3, PageID.128.) So far, it appears that ProSelect's policy, like Aspen's, should be construed as having an excess clause. But ProSelect's other-insurance provision also has two subsections that follow the language quoted

above. The second subsection pertains to the duty to defend: "When this POLICY is excess over any OTHER INSURANCE, WE will have no duty to defend YOU against any SUIT or to pay any CLAIM EXPENSES if any other insurer has a duty to defend YOU against that SUIT or to pay for any CLAIM EXPENSES[.]" (ECF No. 6-3, PageID.129.) The Court reads this subpart to be an escape clause—if ProSelect's coverage is determined to be excess (and thus, another insurer is primary), it owes no duty to defend. *See St. Paul Fire*, 514 N.W.2d at 121 (explaining that an escape clause "provides that there shall be no liability if the risk is covered by other insurance"). So ProSelect's policy appears to have both excess and escape clauses.

As noted, ProSelect relies on these provisions to revisit the issue of its duty to defend. The Court has already found that this argument is foreclosed. Even if it were to revisit this issue, however, ProSelect's argument would not win the day.

The Michigan Supreme Court has stated (and both parties have recognized) that when interpreting two applicable policies that each have other-insurance clauses, the Court must "refrain from rewriting the instant contracts and instead give effect to the meaning and intent of the policy language." *St. Paul Fire & Marine Ins. Co.*, 514 N.W.2d at 117. In other words, the Court must try to reconcile the two clauses if it can.

The parties have not identified Michigan law that describes what approach to take if one policy has an excess clause and another has an escape clause. Both apparently contend that the other-insurance provisions are excess clauses, and thus provide no argument on escape clauses. But ProSelect argues that the two clauses can be reconciled because only its clause states that it does not have a duty to defend. (*See* ECF No. 26, PageID.498 ("Applying the holding in *St. Paul Fire & Marine Ins. Co.*, these policies can be reconciled and lead to the conclusion that a defense is not owed by ProSelect, as the ProSelect policy clearly states that no duty to defend is owed if a duty to defend is owed under another policy.").)

With Michigan precedent in mind, the Court finds that there are a few flaws in ProSelect's method of reconciling the two policies. First, if the Court were to give effect to the provision in the ProSelect policy that disclaims an obligation to pay defense costs, it would be ignoring or rewriting Aspen's excess clause. Say the Court found that ProSelect owed no duty to defend or to pay claim expenses for Morales' defense. Aspen would necessarily become the only, and thus primary insurer responsible for the defense. That outcome would read Aspen's excess clause out of the contract, which states, "this insurance will be secondary to and in excess of any other insurance covering such insured[.]" (ECF No. 6-2, PageID.82.) So even considering Proselect's argument that it has no duty to defend, the Court cannot find that the reasoning passes muster

under the *St. Paul* test when giving meaning to ProSelect's escape clause would necessarily negate Aspen's excess clause.

Second, as Aspen points out, the ProSelect provision disclaiming a duty to defend is conditioned upon a finding that the ProSelect policy is excess over other insurance. (*See* ECF No. 6-3, PageID.129 (specifying that "when this POLICY is excess over any OTHER INSURANCE," there is no duty to defend).) In other words, the subparts of the provision are only triggered once the Court resolves the conflict between the two excess clauses and determines which policy is excess. But both excess clauses are virtually the same, so they cannot be reconciled. "In these cases, there is no rational reason to give the language of one policy preference over identical language in the other policy." *St. Paul*, 514 N.W.2d at 121. In other words, if both policies claim to be excess to the other such that they are not responsible for coverage until the other's limit is reached, neither can be excess. So it appears that the escape clause in ProSelect's policy does not come into effect as the Court cannot find that ProSelect's policy is excess over Aspen's.

By arguing that its escape clause should be given effect, ProSelect attempts to proceed past the question of primary and excess coverage. But the *St. Paul* Court instructs that this question is key. In holding that a pro rata clause and an excess clause can be reconciled by giving effect to the excess clause, the Michigan Supreme Court reasoned that the policy with the pro rata

13

clause is "collectible primary insurance," such that it would trigger the excess clause in the other policy. *St. Paul*, 514 N.W.2d at 120. But, said the Court, the policy with the excess clause was not primary insurance, so it would not trigger the pro rata clause in the other policy. *Id.* Thus, the policy with the pro rata clause was primary insurance (and its pro rata clause was not given effect), and the policy with the excess clause was excess insurance. Here, for ProSelect's escape clause to be given effect, the Court would have to determine that Aspen is the primary insurer and ProSelect is the excess insurer. But it cannot do that based on the reasoning in *St. Paul* that a policy with an excess clause is not primary insurance. Thus, ProSelect's position also defies *St. Paul*'s reasoning by assuming its policy is excess over Aspen's.

Third, the Court notes that the general rule appears to be that, when faced with conflicting excess and escape clauses, the policy with the escape clause is construed as the primary insurance. *See Central Mich. Bd. of Trs. v. Employers Reinsurance Corp.*, 117 F. Supp. 627, 637 (E.D. Mich. 2000) ("The 'traditional' rule renders the insurance policy with the escape clause primary, requiring its coverage to be exhausted before resorting to the policy with the excess clause."); 15A Couch on Insurance 3d, § 219:53; *but cf.* 44A Am. Jur. 2d Insurance § 1765 (noting exceptions to the general rule and that some courts have held that the clauses are irreconcilable). Aspen has not argued that this rule applies here though, and Michigan law is not clear as to whether it has

adopted the general rule. So while the Court declines to apply this rule, the general rule does further undermine ProSelect's argument that its escape clause should be given effect over Aspen's excess clause.

In all, the Court will not adopt ProSelect's position. Instead, pursuant to Michigan law, it finds that the excess clauses in Aspen's and ProSelect's policies are irreconcilable as they are virtually identical, and the Court cannot give both effect.

The question remains how the parties should allocate defense costs when the two other-insurance clauses are irreconcilable. Michigan law provides that in these circumstances, it is appropriate to prorate the cost of defense based on each policy's claim limit. *Frankenmuth Mut. Ins. Co. v. Continental Ins. Co.*, 537 N.W.2d 879, 882 (Mich. 1995) ("In circumstances not presented today, it may be difficult to clearly designate a primary insurer. In such circumstances, the next inquiry should be whether the terms of the policies at issue cover the same loss, the same risk, and the same subject matter. If there is exactly concurring coverage, it might be appropriate to prorate the costs of defense."); *Pioneer State Mut. Ins. Co. v. TIG Ins. Co.*, 581 N.W.2d 802, 807 (Mich. Ct. App. 1998) ("[T]he excess provisions of both of the competing policies are, for all intents and purposes, essentially at the same 'layer.' Under such circumstances, liability is to be apportioned on the basis of the policy limits.");

*State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 398 F. App'x 128, 132 (6th Cir. 2010) (same).

Aspen's claim limit is $2 million (ECF No. 6-2, PageID.74) and ProSelect's claim limit is $1 million (ECF No. 6-3, PageID.109). So given the total claim limit of $3 million, the defense costs should be prorated so Aspen pays 2/3 of the costs and ProSelect pays 1/3 of the costs.

Resisting this conclusion, Aspen argues that ProSelect should be responsible for an equal share of the defense costs because of its concurrent duty to defend. (ECF No. 27, PageID.520.) In furtherance of that argument, Aspen states that the *Pioneer State* court only addressed the issue of allocating indemnity costs, and not defense costs. Nothing in the court's analysis in *Pioneer State*, however, is specific to indemnification or provides a reason to apply the holding only to indemnification. In fact, the *Pioneer State* court described its analysis in terms of both indemnification and defense. *See* 581 N.W.2d at 806 ("Here, both . . . policies, if given literal effect, would lay the responsibility to defend and indemnify . . . on the other company. As Pioneer points out, this would, ironically, leave . . . an 'insured' under both policies [sic] without a defense or indemnification.").

Aspen does not cite to any Michigan law that provides for equal sharing of defense costs when the policies have competing excess clauses. Instead, Aspen invokes equitable principles, such as contribution and equitable

16

subrogation. These principles, however, do not require or suggest that, even when a party is entitled to share the costs with another party, it is entitled to *equal* sharing of the cost. *See Citizens Ins. Co. ex rel. Elopak, Inc. v. Amerisure Ins. Co.*, No. 254034, 2005 WL 3179614, at \*1 (Mich. Ct. App. Nov. 29, 2005 ("Michigan law recognizes that contribution actions between insurers are predicated on the theory of equitable subrogation. The common-law doctrine of contribution enables an insurer who has paid an insured's entire loss to obtain another insurer's pro-rata share of the loss." (citing *Arco Indus. Corp. v. Am. Motorists Ins. Co.*, 594 N.W.2d 61, 68 (1998))). And even if the Court were inclined to award equal division of the defense costs based on principles of equity, the Court sees no reason to displace Michigan law with its own reasoning.

In sum, the Court agrees with Aspen that the other-insurance provisions in both policies cannot be reconciled, so neither policy's provisions take effect. The Court agrees with ProSelect, however, that Michigan law provides that in these circumstances, the insurers will be liable for defense costs proportionate to the limits of each policy, which in this case is 1/3 for ProSelect and 2/3 for Aspen.

### C. Indemnification

ProSelect argues that indemnification should also be subject to a proportionate division based on policy limits. The Court anticipates conducting

17

a similar analysis as it did for defense costs to determine each insurer's liability

for indemnification.

But the issue of indemnification is still not ripe so the Court declines to

decide it at this time. *See Jackson v. City of Cleveland*, 925 F.3d 793, 807–08

(6th Cir. 2019) ("[A] claim for indemnification for damages that may be

awarded on an underlying tort claim should not be adjudicated on the merits

until the underlying claim is adjudicated."); *see also Safety Nat'l Cas. Corp. v.*

*Am. Special Risk Ins. Co.*, 99 F. App'x 41, 43 (6th Cir. 2004) (finding unripe a

claim of indemnification for fraudulent conveyance because, among other

reasons, the underlying claim for fraudulent conveyance had not yet been

adjudicated).

### IV.

For the foregoing reasons, the Court GRANTS IN PART Aspen's partial

motion for summary judgment on Count II (ECF No. 27) and finds that

ProSelect must share in the payment of defense costs because it has a duty to

defend Morales and both policies have similar excess clauses. The Court also

GRANTS IN PART ProSelect's partial motion for summary judgment (ECF

Nos. 25, 26) and finds that ProSelect is responsible for 1/3 of the total defense

costs. The Court makes no findings on indemnification.

Further, because Aspen has not provided any reason for the Court to

order ProSelect pay these costs before final judgment has been entered in this

case, the Court will not so order. Once the issue of indemnification is resolved,

the Court will enter a final judgment in this case.

SO ORDERED.

Dated: September 8, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE